## ALVIN HIATT v. T. W. RITTER.

(Filed 2 June, 1943.)

**1. Public Amusements § 2—**

The proprietor of a place of public amusement impliedly warrants that the premises, appliances and amusement devices are safe for the purposes for which they are designed, but he does not contract against unknown defects not discoverable by ordinary or reasonable means.

**2. Same—**

The proprietor of a bathing establishment owes to his customers a duty to exercise reasonable care to maintain the premises in a safe condition; but he does not insure his patrons against accident; and his duty to patrons is satisfied when he uses reasonable care to maintain the premises in a safe condition for their proper use by the patrons.

**3. Negligence §§ 1a, 5—**

The law only requires reasonable foresight, and when the injury complained of is not reasonably foreseeable, in the exercise of due care, the party whose conduct is under investigation is not answerable therefor. Foreseeable injury is a requisite of proximate cause, which is a requisite for actionable negligence.

**4. Public Amusements § 2: Negligence § 19a—**

In an action for recovery of damages for personal injuries, where plaintiff's evidence tended to show that plaintiff, a patron of defendant's swimming pool, jumped into the water from the side of an ordinary slide board, which he knew how to use, instead of sliding down same to the sandy place at its bottom made for landing, and in so doing struck and injured his foot on the sharp end of a bolt supporting the slide board, motion for judgment of nonsuit should have been allowed.

APPEAL by defendant from *Bobbitt, J.,* at February Term, 1943, of DAVIDSON.

This is a civil action to recover damages alleged to have been sustained on 26 July, 1939, by the plaintiff, a man 28 years of age, by reason of the negligence of the defendant in failing to install and maintain properly, an amusement device, to wit, a slide board, used in connection with defendant's swimming pool, known as Ritter's Lake. The slide board was 36 feet long, 2 feet wide, with wooden side rails about 6 inches high, and the height thereof at its highest point was approximately 18 feet above the water level. The bottom of the slide was metal. The slide board was supported by steel braces attached to planks 2 inches thick and 6 inches wide, said planks being fastened to concrete sills in the bottom of the pool. The braces were set at an angle. The bolt which fastened the particular brace complained of herein protruded approximately ¾ of an inch above the nut. "The bolt sticking up was very

rusty and the end kinder come to a point, not a real sharp point, but kinder rounded."

The evidence discloses the water was 5½ feet deep at the place where plaintiff was injured. The brace in question was located approximately 2 feet from the end of the slide, and the slide at that point was 2 feet above the water. There was sand at the bottom of the pool where patrons entered the water from the end of the slide.

The plaintiff, and other employees of the Fremont Hosiery Mills, at Thomasville, N. C., were on a picnic at Ritter's Lake at the time of his injury. He paid the usual charge for the privilege of using the swimming pool and the facilities in connection therewith.

Plaintiff testified: "There was a slide board in the swimming pool. It was just an ordinary slide board like all swimming pools. I went up it, sliding down several times and played around under it. I went down, started to slide down, and the board was not level, or something—water didn't wet it all the way down, so we sat there a minute, me and Glenn Pool. He did not slide down off the end. He jumped off on the right-hand side. Q. You both were talking—did you both slide down and stop. Ans.: Yes, he slid down first and me behind him and we were sitting on the board talking. We heard someone coming up to slide down on the other side, and we jumped off and he jumped off on the right-hand side and I turned and jumped off on the left-hand side, and my foot struck the brace going down and kinder slid it down for a little piece, and something went in my foot and hurt it bad. I had all my weight on it and I tried to move my foot and I could not. I had to wiggle myself around before I could get loose from this thing in the bottom of the pool."

The injury to plaintiff's foot was serious due to infection, and plaintiff alleges and offers evidence tending to show said injury is permanent.

At the close of plaintiff's evidence, the defendant moved for judgment as of nonsuit, and renewed his motion at the close of all the evidence. Motion denied.

From verdict and judgment awarding plaintiff damages in the sum of $2,000.00, defendant appeals, assigning error.

*H. R. Kyser for plaintiff.*
*McCrary & DeLapp for defendant.*

DENNY, J. The only question presented on the record is whether or not his Honor erred in refusing to grant defendant's motion for judgment as of nonsuit.

The defendant's exception to his Honor's ruling poses this question: Was the defendant negligent in the construction or maintenance of the slide, as alleged in the complaint? We do not think so. "The proprietor

of a bathing establishment owes to his customers a duty to exercise reasonable care to maintain the premises in a safe condition; but he does not insure the safety of his patrons against accident; and his duty to patrons is satisfied when he uses reasonable care to maintain the premises in a safe condition for their proper use by the patrons. *Rom v. Huber* (1919), 93 N. J. L., 360, 108 Atl., 361, affirmed in (1920) 94 N. J. L., 258, 109 Atl., 504." 22 A. L. R., pp. 635-6.

In 26 R. C. L., p. 721, sec. 20, we find the law stated as follows: "Where a party maintains a bath house or a diving or swimming place for the use of the public for hire, and negligently permits any portion of the same or its appurtenances, whether in the house or of the depth of the water or in the condition of the bottom or in things thereon, to be in an unsafe condition for its use in the manner in which it is apparently designed to be used, a duty imposed by law is thereby violated; and if an injury to another proximately results from the proper use of the same without contributory negligence, a recovery of compensatory damages may be had."

And in 62 C. J., p. 865, sec. 48, it is said: "The proprietor of a place of public amusement impliedly warrants that the premises, appliances, and amusement devices are safe for the purposes for which they are designed, the doctrine being subject to no other exception or qualification than that he does not contract against unknown defects not discovered by ordinary or reasonable means."

These authorities are in accord with the law approved by our own Court in *Smith v. Agricultural Society*, 163 N. C., 346, 79 S. E., 632, quoting from 38 Cyc., 368, as follows: "The owner of a place of entertainment is charged with an affirmative, positive obligation to know that the premises are safe for the public use, and to furnish adequate appliances for the prevention of injuries which might be anticipated from the nature of the performance, and he impliedly warrants the premises to be reasonably safe for the purpose for which they are designed."

In the instant case the plaintiff used the slide board a number of times, he knew that such a device had to be firmly supported by braces. He testified: "It was an ordinary slide board like all swimming pools. I went up it sliding down several times and played around under it." At the point where plaintiff jumped into the water the brace was plainly visible for a distance of two feet between the board and the surface of the water. He and a friend had been sitting near the end of the board with their feet hanging down the side. They had been engaged in conversation. Upon hearing someone climbing the ladder at the other end of the slide, they elected not to get off at the end of the board, in the usual and customary manner, where sand had been placed on the bottom

of the pool for the protection of patrons, but instead they elected to jump off of the side of said board, and plaintiff was injured.

An amusement device, however simple, may be dangerous if not used in the manner in which it is apparently designed to be used. It is clear, we think, that the plaintiff herein used the slide board in an unusual and unexpected manner. "Injuries, resulting from events taking place without one's foresight or expectation, or an event which proceeds from an unknown cause or is an unusual effect of a known cause and therefore not expected, must be borne by the unfortunate sufferer." *Martin v. Mfg. Co.*, 128 N. C., 264, 38 S. E., 876; and in *Osborne v. Coal Co.*, 207 N. C., 545, 177 S. E., 769, this Court said: "The law only requires reasonable foresight, and when the injury complained of is not reasonably foreseeable, in the exercise of due care, the party whose conduct is under investigation is not answerable therefor. Foreseeable injury is a requisite of proximate cause, and proximate cause is a requisite for actionable negligence, and actionable negligence is a requisite for recovery in an action for personal injury negligently inflicted." Also in *Brady v. R. R.*, 222 N. C., 367, 23 S. E. (2d), 334, this Court quoted with approval from *Stone v. R. R.*, 171 Mass., 536, 41 L. R. A., 794, as follows: "One is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen or what, as it is sometimes said, is only remotely and slightly probable."

The judgment of the Court below is

Reversed.