ALLEN B. WILKINS v. EARL WARREN.

(Filed 29 April, 1959.)

**1. Negligence § 4f(1)—**

A person paying the admission fee for the privilege of swimming in a public pond is an invitee.

**2. Negligence § 4f(2)—**

The proprietor of a pond maintained for public swimming is not an insurer of the safety of his patrons, but is under duty to exercise ordinary care to maintain the premises in a reasonably safe condition for all ordinary and customary uses by his patrons.

**3. Same— Evidence held for jury in this action to recover for injuries resulting when plaintiff struck his head on submerged wall after diving from dam of public swimming pond.**

The evidence tended to show that a public swimming pond had a dirt and cinder-block dam with a diving board extending from the dam, that a diving platform was maintained some fifty to sixty feet from the dam with a sign thereon reading "Danger Deep Water," that a cinder-block wall had been constructed parallel with the dam about eight feet therefrom, that the water of the pond was muddy and that the top of this wall was some foot and a half below the surface of the pond, and that plaintiff, standing on the dam some five or six feet from the dam diving board, did not use the diving board because two boys were sitting on it, but dived into the water from the dam and struck his head on the submerged concrete wall. *Held:* The evidence is sufficient to be submitted to the jury on the issue of the negligence of the proprietor of the pond and does not disclose contributory negligence as a matter of law on the part of plaintiff.

APPEAL by defendant from *Thompson, Special J.,* September Civil Term, 1958, of HARNETT.

Civil action to recover damages for personal injuries sustained by plaintiff on June 16, 1957, when, upon diving into defendant's pond, he struck an underwater cinder block wall.

On and prior to June 16, 1957, defendant owned and operated "Warren's Mill Pond" for use by the public as a bathing and swimming establishment, maintaining bathhouses and other facilities for the use and convenience of his patrons, for which defendant charged an admission fee.

The only evidence was that offered on behalf of plaintiff, to wit, plaintiff's testimony and the testimony of Robert Lee Faulk, plaintiff's companion. Their testimony tends to show the facts narrated below.

Prior to June 16, 1957, plaintiff had not been to defendant's pond; but on that date he and Faulk paid the required admission fees, went to the bathhouse and changed into their bathing suits, and then

walked to and upon the dam of said pond. The dam, six or eight feet wide, was constructed of dirt and cinder blocks. A diving board extended from the dam out over the water for a distance of about eight feet. It extended towards a "platform," "float," or "tower," on which there was a diving board for high diving, located some fifty to sixty feet from the dam. A sign on this "platform" read: "Danger Deep Water." Two sets of steps (not particularly described) extended from the dam down into the water.

Faulk went upon the diving board at the dam, dived off into the pond and swam to the "platform." While he did so, plaintiff, smoking a cigarette, was standing on the dam. When plaintiff had finished his cigarette, plaintiff noticed two boys sitting on the diving board. Plaintiff then dived, head first, into the pond, from a point on the dam five or six feet from the diving board. When he did so, he struck the underwater cinder block wall.

The cinder block wall had been constructed by defendant. It was parallel with the dam and about eight feet therefrom. It extended upward from the bottom of the pond about three feet. On June 16, 1957, the top of this cinder block wall was about one and a half feet below the surface of the pond.

On June 16, 1957, the pond was muddy. Plaintiff could not see beneath the surface of the water. He could not see the cinder block wall. He had no knowledge it was there. There were no warnings by signs or otherwise of its presence. The area within eight feet of the dam had not been roped off or otherwise designated as separate from the portion of the pond below the end of the diving board or in the area of the "platform." Plaintiff dived towards the "platform" bearing the "Danger Deep Water" sign.

Plaintiff's head hit the cinder block wall first, then his chest, causing injuries.

Shortly after plaintiff was injured, defendant said: "I guess it was all my fault. I should have drained the water off, but I just had not taken the time to do it."

Plaintiff alleged, in substance, that defendant's construction and maintenance in said pond of said underwater cinder block wall and his failure to warn patrons of its presence constituted negligence and proximately caused his injuries.

Defendant, answering, denied negligence; and, as the basis of his plea of contributory negligence, alleged that plaintiff dived from the dam into the water without exercising due care to determine whether he could do so in safety.

The jury answered issues of negligence and contributory negligence

in plaintiff's favor and awarded damages.

Defendant, appealing from judgment in accordance with verdict, assigns as error the court's denial of his motion for judgment of involuntary nonsuit.

*Wilson & Johnson and Bryan & Bryan for plaintiff, appellee.*
*McLeod & McLeod for defendant, appellant.*

BOBBITT, J.  Defendant rightly concedes that plaintiff was an invitee. *Hahn v. Perkins,* 228 N.C. 727, 46 S.E. 2d 854.

In 52 Am. Jur., Theaters, Shows, Exhibitions, etc., § 71, the general rule is stated in these words: "The owner or proprietor of a bathing or swimming resort or pool as a place of public amusement is not an insurer of the safety of his patrons, but he must exercise ordinary and reasonable care and prudence to have and maintain his place and all appliances intended for the use of patrons in a reasonably safe condition for all ordinary, customary, and reasonable uses to which they may be put by patrons, and to use ordinary and reasonable care for the safety of his patrons, and he may be liable for injury to a patron from breach of his duty." To like effect: 86 C.J.S., Theaters & Shows § 41; *Hiatt v. Ritter,* 223 N.C. 262, 25 S.E. 2d 756; *Hahn v. Perkins, supra;* Annotation: "Liability of private owner or operator of bathing resort or swimming pool for injury or death of patron." 48 A.L.R. 2d 104-171.

In *Hiatt v. Ritter, supra,* this Court, in opinion by *Denny, J.,* quoted with approval this statement from 26 R.C.L., Theaters, Shows, etc., § 20: "Where a party maintains a bath house or a diving or swimming place for the use of the public for hire, and negligently permits any portion of the same or its appurtenances, whether in the house or of the depth of the water or in the condition of the bottom or in things thereon, to be in an unsafe condition for its use in the manner in which it is apparently designed to be used, a duty imposed by law is thereby violated; and if an injury to another proximately results from the proper use of the same without contributory negligence, a recovery of compensatory damages may be had."

Appellant relies principally on *Richardson v. Ritter,* 197 N.C. 108, 147 S.E. 676, and *Hiatt v. Ritter, supra;* but these cases are factually distinguishable.

In *Richardson's* case, the plaintiff dived into shallow water and was injured when his head struck the concrete bottom of the pool.

In *Hiatt's* case, the alleged underwater hazard was a bolt, which fastened a brace that supported a slide board and protruded approxi-

WILKINS *v.* WARREN.

mately ¾ of an inch beyond the nut. The plaintiff, instead of going down the slide and getting off at the end in the usual and customary manner, elected to jump off of the side of the slide board and in so doing his foot was hurt when it came into contact with the protruding end of the bolt. It was held that the defendant could not have reasonably foreseen that this bolt, a part of the slide board equipment, would cause injury.

It is noted that the evidence is silent (1) as to the depth of the water on either side of the underwater cinder block wall and (2) as to the level of the surface of the water in relation to the top of the dam.

The statement attributed to defendant would seem to indicate that ordinarily or at times the level of the water in the pond was such that a portion of the cinder block wall was exposed to view.

When considered in the light most favorable to plaintiff, there was ample evidence from which the jury could infer that defendant, who had knowledge of the underwater cinder block wall, could and should have reasonably foreseen that it was a hazard of such nature that injury to his patrons on account thereof was probable. On the other hand, the evidence was not such as to necessitate the conclusion that plaintiff, who had no knowledge or warning of the presence of the underwater cinder block wall, was contributorily negligent when he dived into the pond.

It is noted that plaintiff, when he made his dive, was in close proximity (5 or 6 feet) to the diving board; and that his dive was towards the "deep water" portion of the pond. It is noted further that plaintiff did not strike the bottom of the pond but a cinder block wall, concealed from his view by the muddy water, extending upward from the bottom of the pool; and nothing in the evidence indicates that plaintiff could and should have anticipated the presence of such cinder block wall or other obstruction between the bottom of the pond and the surface of the water.

Plaintiff was not injured because he misjudged the depth of the water into which he dived. There is nothing to indicate that he would have received any injury by diving into the pond under the circumstances disclosed by the evidence if the cinder block wall had not been there.

Upon the evidence, the issues of negligence and contributory negligence were properly submitted for jury determination.

No Error.